## Case No. 16,339.

### UNITED STATES v. SMITH.

[13 N. B. R. 61.][1]

District Court, N. D. New York. 1874.

BANKRUPTCY—FRAUDULENT DISPOSITION OF GOODS—CRIMINAL PROSECUTION—EVIDENCE.

1. It is not necessary that the goods which have been fraudulently disposed of shall have been obtained within three months prior to the commencement of the proceedings in bankruptcy, in order to convict a party of a fraudulent disposition thereof.

2. The intent of a party is ordinarily to be inferred from evidence which tends distinctly and directly to prove the intent.

3. In order to obtain a conviction for concealing assets from the assignee, it is not necessary to prove a demand on the part of the assignee.

During the months of September, October, and November, 1871, Jacob O. Smith, then doing business as a retail boot and shoe merchant at Rochester, New York, obtained upon credit about twenty-five thousand dollars worth of boots and shoes from various wholesale dealers in New York and the manufacturing towns of the East. The first notice that the creditors received of Smith's fraudulent operations was about the middle of December, 1871, when an attorney from Rochester came to New York City and endeavored to effect a compromise upon a low basis, making the usual plea of hard times and misfortune. Upon examination it was found from the books of the express and railroad companies that, during the months of October and November, Smith received a large quantity of boots and shoes from New York City and the East, and that during the time he was receiving these goods he was shipping large quantities of boots and shoes to the auction houses of George P. Gore & Co., of Chicago; Murdock & Dickson, of St. Louis; to his brother, F. H. Smith, at Chicago, to be sold at auction; to his father, I. Smith, at St. Louis, to be sold at auction; to J. O. Smith, at Lockport, N. Y., and to various auction houses in Louisville, Ky., and Cincinnati, O. It was further ascertained that the goods shipped to J. O. Smith, Lockport, were put into a store there, sold at retail for a few days, and the remainder, amounting in value to about eight thousand dollars, was sold by Smith to one A. W. Henderson on the 1st of December, 1871. For this sale Smith claimed he received from Henderson about two thousand dollars in money, and about six thousand dollars in Henderson's individual notes. It further appeared that on the 14th of December, 1871, one L. M. Farnham, of Chicago, filed a petition in bankruptcy against Smith. That Smith made the affidavit of bankruptcy admitting he was a bankrupt; and on the same day Smith's attorney consented to an immediate adjudication in bankruptcy. The proceedings in bankruptcy were probably collusive. The peti-

[1] [Reprinted by permission.]

tion was verified by the attorney instead of the creditor; and as such a petition had then been held effective, it was doubtless a part of the plan to defeat any civil or criminal proceeding by setting up the defect in the petition. When the creditors determined to prosecute the case, they caused a new petition to be filed on behalf of James Griffin, of New York, and then had Smith indicted for disposing of his goods with intent to defraud, and for concealing his assets. The defect in the petition was the main reliance of Smith's counsel upon the trial, but the court held that Smith's admissions in the affidavit of bankruptcy, and a recent decision of the circuit court, were conclusive against the defendant.

Richard Crowley and Charles M. Dickinson, for the United States.

George Gorham and Mr. Tourtelotte, for defendant.

HALL, District Judge. Whatever may be your final verdict in this case, I am sure you will agree with me in the feeling, that it is a case which deserves your most careful and serious consideration. The charge against the defendant is one of a serious character, and the punishment, if he is convicted, will be of sufficient magnitude to deter others, to some extent, from the commission of similar offenses. It is important to him, therefore, that he should not be pronounced guilty, and it is the duty of the jury not so to pronounce him guilty, unless the evidence in the case justifies that verdict; but, on the other hand, if he is guilty of the offense charged upon him, it is certainly the duty of the jury, as it is for the interest of the public, that they should not hesitate, if they are entirely convinced of his guilt, to pronounce him guilty. The bankruptcy act passed by congress, has for its object not only the discharge of the unfortunate, but honest debtor, from his liabilities, but it has also for its object the security of the creditor against the fraud and dishonesty of his debtor; and in pursuance of the desire and object of congress to provide securities against fraud on the part of debtors, a section was introduced into the bankruptcy act upon which the indictment in this case is found. The section contains several provisions, making several different acts criminal, and among them are two which form the basis of this indictment. There are three counts in the indictment; the first and the last count are founded upon a provision of the statute which declares that if any bankrupt shall, with intent to defraud his creditor, within three months next before the commencement of proceedings in bankruptcy, pawn, pledge, or dispose of, otherwise than by bona fide transactions, in the ordinary course of his business, any of his goods or chattels, which have been obtained upon credit, and which remain unpaid for; he shall be guilty of a misdemeanor, and shall be punished as provided in this section.

You will see, gentlemen, the general object of this provision. Whenever a debtor, especially a trader, is clearly insolvent, it is the object of the bankrupt act to enable his creditors to take proceedings against him, and to secure a fair and equal division of his property among them, with such preference as the act itself provides for, with the exception of such property as the bankrupt is entitled to retain under the provisions of the act. The case proceeds upon the ground that each one of the creditors is entitled to share equally; and when it has been established that the act of bankruptcy has been committed, that the party is insolvent, and that he has done something which is in violation of the act, and in violation of the rights of the creditors, proceedings may be taken against him by his creditors, he may be forced into bankruptcy, and his property then be distributed under the provisions of this act. For the purpose of carrying out this object, securing this equality among creditors, securing the proper division of the property of the bankrupt, this section. as I have stated, provides that if he shall within three months next before the commencement of the proceedings in bankruptcy, dispose of his property except by bona fide transactions, that is, transactions in good faith, and in the ordinary way of his trade—that is, the ordinary, regular, and customary mode of proceedings in his trade or business, prior to the time when he became a bankrupt—now, if he shall do this, if he shall pawn, pledge, or dispose of, otherwise than in an honest manner. and in bona fide transactions, and in the ordinary ways of his trade, any goods or chattels which have been obtained on credit, and remain unpaid for, in this way, with intent to defraud his creditors, he is guilty under the provisions of this act. It is not necessary, as has been stated to you by the district attorney, that the goods which have been disposed of shall have been obtained within the three months next prior to the time when the proceedings in bankruptcy shall have been filed against him. No matter when they were obtained, if they have been obtained upon credit, and have not been paid for, and have been so disposed of within the three months next prior to the petition in bankruptcy, with the intent to defraud, then the offense is completed, and the defendant must be found guilty of the offense charged against him.

Of course, gentlemen, in looking at this case, you will consider what is the ordinary way of trade with the defendant, and persons transacting business of a similar character, and you must determine from the evidence whether the transactions to which your attention has been called by the district attorney, were bona fide transactions, honest transactions, transactions made in good faith, without any intent to defraud his creditors, or whether they were of a different character, and made with intent to defraud.

You have heard, gentlemen, the evidence at length upon this question; you have heard very able and full arguments from the counsel of the accused, and from the public prosecutor, and I shall not attempt to give you any instructions in regard to the evidence which has been given here, and certainly not indicate to you any opinion in regard to your duty in respect to the question of fact which has been submitted to you. The intent of a party is ordinarily to be inferred from evidence which tends distinctly and directly to prove the intent, because it is impossible in ordinary cases to prove what the intent of a party is, except by what is called circumstantial evidence. Of course, jurors have no power to look into the mind of the party to determine precisely what his intent may be; but that intent is to be inferred from all the circumstances of the case, subject, however, to this theory and presumption of law, that a man intends when he commits an act, the ordinary and usual consequences of that act, or the inevitable consequences of that act. If a man commits an act, the natural consequences of which are to defraud his creditors, the law presumes that it is done with that intent, and that presumption must be acted upon, and must prevail, unless it is destroyed by the evidence produced upon the part of the party accused.

Now, in reference to the other count in the indictment; gentlemen, that count is founded upon a provision of this section, which also makes it a criminal offense for a bankrupt to conceal from his assignee, or omit from his schedule, any property or effects whatsoever. You are, probably, aware that it is the duty of the bankrupt, in every case, whether his condition is voluntary on his part, or whether he is declared a bankrupt upon the petition of his creditors, to make a schedule and inventory, in which this property is to be described. That inventory is to be verified by his oath, and this is the schedule which is referred to, undoubtedly, in this provision of the statute. In this particular case, although the order of adjudication, being in the form prescribed by statute, required the defendant to file such an inventory and schedule, the evidence in the case is, I believe, that no such inventory and schedule has been filed, and therefore the ground on which the defendant is to be convicted under the second count, if he is convicted at all, must be upon the ground that he fraudulently concealed from his assignee, or assignees, some property or effects which belonged to him, and which should have passed into the hands of his assignee. The evidence upon that question relates almost exclusively to money which he alleges he received from Henderson on the sale of the goods in the store in Lockport. It is insisted here, by the district attorney, that upon his testimony given before the register, he stated that he received two thousand dollars as a part of the consideration for the sale of goods in that store;

and that this property, as is insisted here on the part of the public prosecutor, has been concealed from his assignees; has not been turned over to them, and has not been made available.

Something has been said here in reference to a demand being necessary in order to charge the defendant under the provision of this statute. Under the evidence in this case I am of the opinion that no demand is necessary as a matter of law, in reference to the questions arising under this count in the indictment. He was brought before the register, as appears by his own deposition, and examined in reference to his property; and upon that examination it was, undoubtedly, his duty, if he had property in his hands of this description and to this amount, to disclose that fact. It is evident from the examination which was made, that this examination was had for the purpose of discovering whatever should pass into the hands of the assignees for the benefit of his creditors; and if upon that examination he willfully omitted to account for that money, if he, in point of fact, received money to the extent of two thousand dollars, and withheld it from his creditors and from his assignee, then he is liable to be convicted under the second count of the indictment. If he paid it over to his creditors, to honest creditors, and stated the fact upon his examination, then he would not be liable, under this count in the indictment, for concealing from his assignee this amount of money. If he, having this money, thus concealed the knowledge of it from the assignee, he is liable to conviction, notwithstanding that there was no demand upon the part of the assignee or receiver, or any person authorized to receive it. These are, perhaps, gentlemen, all the remarks which it is necessary to submit to you in this case. You must examine it with care. Your verdict should be the result of your calm and deliberate judgment. You should be influenced by no passion or feeling, and by no sympathy. In a case of this character the interests of the public as well as the interests of the defendant require that your verdict should be the result of your deliberation and judgment, and in accordance with your sworn duty.